UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH D. JR.,

                              Plaintiff,

v.                                                        5:19-CV-120
                                                          (TWD)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                              Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
 *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.          LUIS PERE, ESQ.
 *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER

Currently before the Court, in this Social Security action filed by Joseph D. Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the Social Security Administration ("SSA") for a *de novo* review.

**I.    BACKGROUND**

On December 28, 2015, Plaintiff protectively filed Title II and Title XVI applications for disability insurance benefits and supplemental social security income alleging disability as of February 12, 2015.  (Administrative Transcript[1] at 12.)  These claims were denied on February 18, 2016.  T at 67-68.  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  T. 88-89.  Plaintiff subsequently appeared at an administrative hearing before ALJ Charles Woode on November 28, 2017.  T. 28.  Plaintiff testified he suffered from pain in his "lower joints" including his knees and hips.  T. at 34-36.  Vocational expert Corinne Porter also testified.  T. at 52-58.

On January 23, 2018, the ALJ issued a written decision finding Plaintiff was not disabled. T. 12-23.  The ALJ's decision followed the SSA's five-step sequential evaluation process for determining whether an adult is disabled.  *See* 20 C.F.R. § 416.920(a).  At step-two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, obstructive sleep apnea, and obesity.  T. at 14.  The ALJ found, based on the above-stated impairments, Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work" except

> [he] is capable of occasional stooping, kneeling, crouching, crawling, and climbing of ramps or stairs.  He is unable to operate push or pull controls with his left foot, and cannot climb ladders, ropes, or scaffolds.  He is to avoid concentrated exposure to extreme temperatures, humidity, vibration and hazards such as dangerous machinery and unprotected heights.  The claimant requires the opportunity to use a hand held assistive device for long distance ambulation and must have the opportunity to stand momentarily after sitting for between thirty and sixty minutes.  The

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

> claimant should be given the option to elevate his legs at hip level
> for fifteen to twenty minutes, twice daily.

T. at 16.

In making his RFC determination, the ALJ considered medical records and opinion evidence. As relevant here, the ALJ considered the opinions of Plaintiff's "treatment providers." T. at 20. Specifically, James A. Dispenza's ("Dr. Dispenza") August 29, 2017, opinion (T. at 590-94), and Robert A. Sherman's ("Dr. Sherman") October 17, 2017, opinion (T. at 639-43). T. at 20. Dr. Dispenza, Plaintiff's primary care physician whom he has seen for various medical problems since 2014, opined he could never lift or carry anything above 20 lbs., could occasionally lift and carry up to 20 lbs., and could frequently lift and carry up to 10 lbs. T. at 590. He further noted Plaintiff could sit only three hours at one time and in total during an eight-hour workday. T. at 591. Supporting his findings, Dr. Dispenza mentioned issues with Plaintiff's "hips and knees." T. at 592. Dr. Dispenza opined Plaintiff could never climb, balance, crouch, kneel or crawl and could only occasionally stoop. *Id*. Finally, he noted Plaintiff would miss work about once a month. T. at 594.

Dr. Sherman, Plaintiff's orthopedist who performed his hip replacement surgery, opined Plaintiff could only occasionally lift 10 lbs., but never anything heavier. T. at 639. He further noted Plaintiff could sit four hours total during a work-day but only two hours at one time. T. at 640. In addition, Plaintiff could stand a total of three hours—in one-hour increments; and walk a total of two hours less than an hour at a time. *Id*. According to Dr. Sherman, Plaintiff would need a job that allowed shifting positions and he would need to take a 20-30-minute unscheduled break "daily." *Id*. Dr. Sherman pointed to Plaintiff's right hip replacement and a right knee MRI to support his opinions. *Id*.

3

The ALJ assigned these doctors' opinions "little weight" for ostensibly two reasons. First, according to the ALJ, "treatment records contemporaneous with these opinions describe largely unremarkable physical findings, with only somewhat reduced range of motion and some knee[] crepitus." *Id*. (citing T at Exs. 1F, 2F, 6F). The ALJ further opined the doctors "may [have] provide[d] supportive notes or reports in order to satisfy patient requests and avoid unnecessary doctor/patient tension." *Id*.

Given Plaintiff's RFC, the ALJ concluded he was not disabled because there were significant numbers of jobs in the national economy he could perform. Specifically, the ALJ noted the vocational expert testified someone of Plaintiff's "age, education, work experience, and residual functional capacity" could perform as a telephone quotation position, tube operator, and order clerk. T. at 22.

Plaintiff sought review of the ALJ's decision to the Appeals Council. However, on November 30, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T. 1-3.

On January 29, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. (Dkt. No. 1.) Pursuant to General Order 18, each party submitted supporting briefs which this Court treats as competing motions for judgment on the pleadings. (Dkt. Nos. 9, 11.)

The main thrust of Plaintiff's challenge is that the ALJ did not follow SSA regulations when he weighed and ultimately discredited the medical opinions of his treating physicians. (Dkt. No. 9 at 13-21.) Plaintiff also contends an unconstitutionally appointed ALJ administered his case. *Id*. at 21-24. Defendant, on the other hand, asserts substantial evidence supports the

ALJ's decision and Plaintiff waived any challenge to the propriety of the ALJ because he did not raise the issue at the administrative level. (Dkt. No. 11.)

## II. DISCUSSION

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

5

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

B. **Standard for Benefits[2]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[2] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C. Treating Physician Rule

As noted above, Plaintiff's primary argument is the ALJ erred in declining to give controlling weight to the opinions of his treating physicians. The Court agrees. SSA regulations mandate specific procedures an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. Recently, the Second Circuit has articulated the procedure as a two-part analysis. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). First, the ALJ must decide whether the opinion is entitled to controlling weight. *See id*. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

7

[the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); *see, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. *See Estrella*, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).

At both steps, the ALJ must "'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32 (brackets in the original)). Notably, an ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Estrella*, 925 F.3d at 96 (citing *Selian*, 708 F.3d at 419–20). However, if "a searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed," the Court will nonetheless affirm. *See Estrella*, 925 F.3d at 96 (citing *Halloran*, 362 F.3d at 32).

Turning to the ALJ's decision, it appears he acknowledged the opinions of Drs. Sherman and Dispenza should ordinarily be entitled to deference given their relationships with Plaintiff. The ALJ nonetheless declined to give controlling weight to those opinions and instead afforded

them "little weight." T. at 20. In doing so, he contended the opinions are inconsistent with the "largely unremarkable" physical findings in the record and the doctors may have provided a restrictive opinion to avoid conflict with Plaintiff. *Id*.

At the outset, the ALJ's statement regarding Plaintiff's treating physician's supposed motivation to provide Plaintiff medical opinions to help him qualify for benefits is not a good reason to reject their opinions or to reduce those opinions' relative weight. *See Foxman v. Barnhart*, 157 F. App'x 344, 347 (2d Cir. 2005) (summary order). As Plaintiff argues, the ALJ provided no evidence to support such a claim. The ALJ's argument strains credulity given he is commenting on *two* different doctors who practice at *two* different hospitals. Defendant acknowledges as much. (Dkt. No. 11 at 5.) However, Defendant suggests the Court should overlook this error because the ALJ's "evaluation of the opinions really turns on the consistency and supportability factors." *Id*.

The ALJ, however, did not wrestle with the "consistency and supportability" factors in an appropriate manner. Rather, in the lone paragraph considering *two* different doctors' opinions he asserts the medical diagnosis and findings are largely unremarkable and cited to Exhibits 1F, 2F, and 6F. T. at 20. However, many of these records are not from the relevant doctors or do not concern the relevant impairments. *See e.g.*, T. at 239-40 (describing Plaintiff's Achilles surgery).

Furthermore, these records do not include all the relevant evidence; specifically, diagnostic testing of Plaintiff's knees and hip. *See, e.g.,* T. at 635 (CT scan regarding knees and hip); 585 (X-rays of knee). Importantly, a CT scan of the lower extremity performed on July 17, 2017, showed "[m]ild to moderately advanced osteoarthritic changes . . . involving both knees." T. at 635. That same scan noted "[s]mall joint effusions" in the knees and "chronic appearing

9

ossicles along the posterior joint line of each knee that are probably degenerative," as well as "[p]rominent degenerative spurring." *Id.*[3] These medically acceptable clinical and laboratory diagnostic techniques tend to support, not detract, from Dr. Dispenza's and Dr. Sherman's opinions.

Thus, the ALJ committed legal error because the reasons he provided for discrediting Plaintiff's two treating physicians are not fully developed and are not consistent with the medical evidence. Though it is the ALJ's prerogative to weigh evidence, he commits legal error when he ignores relevant evidence that tends to disagree with his conclusion. *See Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence as supports his determination, without affording consideration to evidence supporting the plaintiff's claims. It is grounds for remand for the ALJ to ignore parts of the record that are probative of the plaintiff's disability claim."); *see also Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.").

Here, the ALJ also committed error when he substituted his view of the medical imaging tests for Plaintiff's doctors' opinions. Neither the Court nor the ALJ may "substitute [her] own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). For example, the ALJ commented that the imaging studies identify "only degenerative joint disease of the knees" but not "debilitating abnormalities." T. at

---

[3] Though, the ALJ discussed these imagining tests earlier in his decision, he did not do so in relation to Plaintiff's treating physician's opinions as is required under the regulations. Further, the ALJ did not discuss the CT scan in relation to Plaintiff's knee pain and disregarded the x-rays of Plaintiff's knees as "identifying only degenerative joint disease of the knees." T. at 18.

18. Dr. Sherman, however, specifically relied upon imaging studies to inform his medical opinion. T. at 640. The error of swapping his opinion for Dr. Sherman's is compounded here where he ostensibly did not consider the full extent of the imaging studies completed on Plaintiff's knees. T. at 585, 635.

While "[i]t is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such," *Bliss v. Colvin*, 3:13-cv-1086 (GLS/CFH), 2015 WL 457643 at *10 (N.D.N.Y. Feb. 3, 2015)), here the ALJ did not explain how the evidence conflicted, nor did the ALJ explain how he purported to resolve that conflict. *See Ferraris*, 728 F.2d at 587 ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."). If the ALJ put greater weight on other evidence in the record, the ALJ was required to explain why he gave that evidence more weight than the records from treating physicians. *See* 20 C.F.R. § 404.1527(d)(2) ("[The Commissioner] will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion.").

The Commissioner's defense of the ALJ's decision is not persuasive. Defendant's primary argument is that it is "clear" the ALJ rested his opinion on a single "contemporaneous" record that was "issued right around" the same time as the doctors' opinions. (Dkt. No. 11 at 7 n.4.) For one, relying on a single record to reject the opinions of two of Plaintiff's treating physicians is legal error. *See Estrella*, 925 F.3d at 97 (noting "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Moreover, Defendant severely overstates the importance of this single treatment note. Though it does appear Plaintiff had recovered well from a total hip replacement, the record indicated Plaintiff's knee pain remained

and was not improving. T. at 623. Specifically, Dr. Sherman noted Plaintiff's knee pain had not improved after cortisone injections and he ordered an additional MRI to "evaluate internal derangement" of Plaintiff's right knee. T. at 624.[4] Thus, rather than showing Plaintiff's knee symptoms have improved, this record is consistent with earlier records from Dr. Sherman explaining Plaintiff had exhausted conservative treatment and may need to consider full knee replacement. T. at 568.

Moreover, Defendant's durational argument is curious because it directly contradicts the ALJ's specific findings at step-two of the sequential analysis. To that end, at step-two, the ALJ is directed to consider the severity of the impairments in relation to the durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found Plaintiff's "degenerative joint disease" was a severe impairment, *i.e.*, it met the durational requirement. Though the ALJ is not clear exactly what he meant by "degenerative joint disease" the Court assumes he was referring to Plaintiff's knee and hip conditions.

In summary, the ALJ failed to give good reasons for rejecting Dr. Sherman and Dr. Dispenza's assessment of Plaintiff's ability to handle a typical workday. The ALJ therefore erred in declining to give those doctors' opinions controlling weight.

D.     **Appointment Clause**

Because remand is necessary for the reasons identified above, the Court declines to reach a decision on Plaintiff's claim regarding the propriety of the ALJ's appointment. The Court,

---

[4] The Court has searched the record but could not locate the MRI records. It was the ALJ's duty to seek out those additional imagining studies. Failing to develop the record is another legal error justifying remand. *See Elliott v. Colvin*, No. 13–CV–2673, 2014 WL 4793452 at \*18 (E.D.N.Y. Sept. 24, 2014) ("[W]here the ALJ has failed to fully develop the factual record, the proper remedy is to remand the case for further proceedings."). Upon remand, the ALJ should contact Dr. Sherman to obtain updated imaging studies.

however, notes the SSA has appeared to correct any deficiency in the appointment of ALJs through regulation.  *See* 84 Fed. Reg. 9582-02 (Mar. 15, 2019).

### III. CONCLUSION

In light of the foregoing, the Court finds substantial evidence does not support the ALJ's decision.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: January 14, 2020
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge